Alfia P. **CAVALLARO** et al.

v.

Roosevelt **WILLIAMS.**

Civ. A. No. 72–1364.

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1975.

Marvin W. Factor, Philadelphia, Pa., for plaintiffs.

Stanley Frank, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

The above-named plaintiffs commenced this diversity action against the defendant to recover for damages sustained when the automobile in which they were riding was struck in the rear by a vehicle owned and operated by the defendant. The case proceeded to trial and the jury, in response to a special interrogatory submitted by the Court, found the defendant not negligent.[1] Presently before the Court is the plaintiffs' motion for a new trial.

Viewing the evidence in the light most favorable to the defendant, the following operative facts were adduced at the trial of this matter: On the day of the accident in question, plaintiffs were returning to Philadelphia from Quantico, Virginia, in a 1968 Buick Skylark owned by Alfia Cavallaro, one of the plaintiffs herein. The vehicle in which plaintiffs were traveling came to a complete stop at an "Exact Change" toll booth located at the northbound toll plaza of the Baltimore Harbor Tunnel in Baltimore, Maryland. As the driver of the vehicle, plaintiff Anthony J. Melchiorre, attempted to deposit the required amount of money in the "Exact Change" slot, the automobile driven by Roosevelt Williams struck the plaintiffs' vehicle in the rear end, causing the personal injuries asserted in the plaintiffs' complaint.

Williams testified that as he approached the toll booths in the Baltimore Harbor Tunnel toll plaza his brakes failed and he was unable to bring his vehicle to a stop. According to the defendant, the brake pedal "went to the floor" when he attempted to apply the brakes. Before striking the rear of plaintiffs' car, defendant's vehicle struck the concrete island dividing the traffic lanes and another car stopped at the toll booths.

Williams stated on direct examination that his automobile had undergone the required New York State inspection approximately two months prior to the accident. He further testified that before leaving on the trip from New York to Virginia[2] he personally took the vehicle to a service station and requested the service station attendant "to check the brakes, check the, you know—check the brakes, the tires . . . the power steering, you know, the car." [N.T. 3–133] On the day of the accident, Williams checked the brake fluid and found the fluid to be "full." [N.T. 3–134]. Finally, the defendant testified that he experienced no problems or difficulties with the brakes until he approached the toll plaza at the Baltimore Harbor Tunnel.

Alfreda Williams' testimony substantially corroborated that of her husband. She testified that they experienced no problems with the brakes while travel-

---

1. The special interrogatory read as follows: "Was the defendant, Roosevelt Williams, negligent?" The jury answered, "No."

2. The defendant and his wife, Alfreda Williams, drove from Rockaway Beach, New York, to Alexandria, Virginia, on July 22, 1970, two days prior to the accident. The Williamses were returning home from the two-day trip to Virginia at the time of the collision.

ing from New York to Virginia or during their stay in Virginia. It was not until the vehicle approached the toll booth that the brakes failed. According to Mrs. Williams, the defendant pumped the brake pedal repeatedly to no avail. The witness described how the defendant undertook evasive driving action in an effort to avoid striking a passenger vehicle.

The plaintiff has advanced several arguments in support of the motion for a new trial, only one of which merits discussion. It is the contention of the plaintiffs that in order for a defendant in a case involving a rear-end collision to properly rely upon the defense of sudden and unexpected brake failure, the defendant must show the precise nature of the mechanical defect which led to the brake failure and that such mechanical defect could not have been discovered prior to the accident by a reasonable inspection of the automobile. Defendant claims, on the other hand, that proof of a reasonable inspection and sudden brake failure is sufficient to rebut the inference of negligence arising from a rear-end collision caused by brake failure. The issue presented for the Court's determination is whether Maryland law requires a defendant who claims sudden brake failure as the cause of the accident to prove the exact nature of the defect that led to the brake failure.[3]

■ Under the law of Maryland, the fact of a rear-end collision due to brake failure gives rise to a *prima facie* case of negligence, which may then be rebutted by a showing of adequate inspection and sudden unexpected failure. Miller v. Reilly, 21 Md.App. 465, 319 A.2d 553 (1974); Mintzer v. Miller, 249 Md. 506, 240 A.2d 262 (1968). Proof of the accident, coupled with the defendants' explanation of brake failure, shifts to the defendant the burden of going forward with the evidence to establish proper and adequate inspection and a sudden failure without warning. Miller v. Reil-

ly, *supra*; Garfinkle v. Birnios, 232 Md. 402, 194 A.2d 91 (1963). In light of the nature of the collision at the toll plaza, and defendant's assertion that he was unable to stop his vehicle due to the absence of brakes, the burden of showing proper inspection and an unexpected brake failure shifted to the defendant. The record contained sufficient evidence from which the jury could reasonably conclude that the defendant controverted the inference of negligence.

Plaintiffs, nevertheless, argue that defendant's burden is greater than that described above. As previously mentioned, plaintiffs contend that defendant must show the exact nature of the mechanical defect in order to assert the defense of brake failure and to be entitled to a jury instruction thereon. The bottom line of plaintiffs' argument is that the jury must be apprised of the precise defect in order to determine whether the defect would have been discovered by a reasonable inspection by the owner.

■ The Court's research has not disclosed a Maryland case in which a defendant relying on the defense of sudden brake failure was required to specify the exact nature of the brake defect. In several Maryland decisions involving a rear-end collision the precise defect was the subject of testimony by an automobile mechanic or otherwise qualified witness. See, Currie v. United States, 312 F.2d 1 (4th Cir. 1963); Garfinkle v. Birnios, *supra*. However, the Court does not construe Maryland law to require a defendant who claims sudden brake failure to show the precise nature of the mechanical defect that led to the brake failure.

In Miller v. Reilly, the defendant testified that the foot brake "went right to the floor" as she attempted to stop the vehicle at a traffic signal. In the course of her testimony, the defendant, who was driving home from work at the time of the accident, stated that she had not

---

3. Since the accident occurred in Maryland, we must apply the substantive law of that state in this Federal diversity action. Madrin v.

Wareham, 344 F.Supp. 166 (W.D.Pa.1970); 28 U.S.C. § 1652.

encountered any problems with the brakes either driving to work or returning home until the brakes failed at the traffic light. The defendant's father, the owner of the car, testified that new brakes had been installed on the vehicle approximately ten months before the accident and that the brakes had been adjusted one month prior to the collision. No evidence was presented as to the precise cause of the brake failure. Relying on Wood v. Johnson, 242 Md. 446, 219 A.2d 231 (1966), and Sothoron v. West, 180 Md. 539, 26 A.2d 16 (1942), the Maryland appellate court affirmed the trial court's refusal to direct a verdict for the plaintiffs.

The court in the *Sothoron* case reversed a judgment entered in favor of the defendant by a lower court sitting without a jury. The finding of liability was based on the defendant-driver's failure to test the brakes before their first use in the descent of a steep hill. A close reading of the decision suggests that if the defendant had simply tested the brakes prior to the accident and had found them to be operable a verdict for the defendant would have been proper despite the eventual brake failure. The court stated at 26 A.2d p. 18: "If such a test [foot test] shows the brakes in working order, and then they suddenly fail, the driver may not be liable for negligence in driving with them."

Several Maryland decisions have dealt with the question of the extent of the evidentiary burden imposed upon a defendant who claims brake failure to be the cause of a rear-end collision. In *Sothoron,* the court declared:

"The better and more general rule, however, seems to be that failure of brakes to operate makes only a prima facie case which the driver may defend by showing proper inspection and a sudden failure without warning."

26 A.2d at p. 17.

Substantially the same standard was set forth in Garfinkle v. Birnios, *supra,* and Mintzer v. Miller, *supra,* wherein the defendant's burden was defined in both of the above cases as one of going forward with evidence showing a proper inspection and a sudden failure to rebut the inference of negligence. Similarly, in Miller v. Reilly, *supra,* the court held that *prima facie* evidence of negligence "must be controverted by a showing of adequate inspection and sudden unexpected failure." 319 A.2d at 559. Nowhere in the Maryland decisions do we find the requirement that a defendant in a brake failure case must specify or show the exact nature of the mechanical defect that led to the brake failure.

The defendant in the case at bar testified that the automobile involved in the collision had been inspected in accordance with New York law approximately two months before the accident. Immediately prior to the New York-Virginia excursion, the defendant took the vehicle to a service station and requested that the brakes and steering apparatus be checked.[3] According to defendant's testimony, he personally checked the brake fluid before embarking on the return trip to New York. Under the applicable Maryland law, such testimony, if believed by the jury, is sufficient to controvert the inference of negligence that arises from the nature of the collision and the defendant's explanation of brake failure.

Accordingly, plaintiffs' motion for a new trial will be denied.

3. Defendant testified that he instructed the attendant on duty at the service station to check the brakes and power steering but that he was not actually present when the automobile was checked.