JOSEPH JAMES JACOBS, JR. *v.* STATE OF
MARYLAND

[No. 610, September Term, 1975.]

*Decided September 10, 1976.*

The cause was argued before MOYLAN, DAVIDSON and
MASON, JJ.

*James T. Smith, Jr., Assigned Public Defender,* for
appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,*
with whom were *Francis B. Burch, Attorney General,
Sandra A. O'Connor, State's Attorney for Baltimore County,*
and *William S. Townsend, Assistant State's Attorney for
Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This case is controlled by the ever-widening, though
logically foreseeable, ripples put in motion by *Mullaney v.
Wilbur,* 421 U. S. 684 (1975), and *In re Winship,* 397 U. S. 358
(1970). The appellant, Joseph James Jacobs, Jr., was
convicted by a Baltimore County jury of common law

assault, the use of a handgun in the commission of a felony (to wit, assault with intent to murder) and malicious shooting with intent to maim. The issue is the constitutional propriety of a jury instruction on the question of self-defense and the necessary threshold question of whether self-defense was generated as a legitimate jury question.

In looking to that threshold question, we will consider the admissible evidence in the light most favorable to the appellant. Involved was a riotous fight between two groups of young men. According to the appellant and two of his witnesses, the incident occurred in the following fashion. The appellant and two friends were driving home in a green van along Eastern Boulevard. As they passed a red Mustang, they gratuitously yelled to the occupants of the Mustang something to the effect of "Move that crate." Shortly thereafter, they stopped for a red light. The red Mustang pulled up next to them and one of the occupants, apparently stung by the earlier remark, got out and came to the passenger side of the van. As one of the occupants of the van rolled down the window, a fist came in and struck him in the face. Simultaneously a metal object struck the van. The van then moved away and proceeded along Eastern Boulevard. The red Mustang followed behind them and soon a large blue car pulled up beside them. The two cars in combination forced the van off the road. Ronald Rewers, one of the occupants of the van, pulled out a .25 automatic pistol, handed it to the appellant, and told him to use it if it became necessary. The van was forced off the road on a school driveway and was blocked by the two cars. The occupants of both cars got out and approached the van. Someone reached in and opened the door to the van. One of the occupants of the van, Warren Smolko, was dragged out and was attacked. Several persons attacked the appellant. They beat him and kicked him as he was kneeling in the back of the van. He ultimately fired one shot in the air as a warning shot. He was then approached by one of the assailants who was carrying a baseball bat and appeared as if he was going to strike the appellant. The appellant shot him first. The baseball bat was found at the scene of the fight by the

Baltimore County Police. After the fight, the appellant was badly bruised and bleeding all about the head and face.

One of the appellant's witnesses stated that the attackers numbered "four or five guys," out of the blue car alone, and that they approached the van carrying bats and clubs and a tire iron. The appellant testified affirmatively that he feared for his life and limb and fired only in self-defense. Although the jury was by no means obliged to accept this defense version of the fight as opposed to the State's version, it was privileged to accept it. It was, by definition, a jury question.

It is unquestioned that one is privileged to use force, even deadly force, in self-defense if legitimately and reasonably in fear of suffering death or serious bodily harm. See generally LaF'ave and Scott, *Criminal Law*, 391-397; Perkins, *Criminal Law* (2nd Ed. 1969), 993-1012. No extended treatment of the law in this regard is necessary as neither the State nor the defense are at issue over this settled principle of law. Indeed, the trial judge gave a thorough and accurate explanation of the law respecting self-defense and all of the various situations which the jury must consider thereunder. At issue here, rather, is not the substance of that law but the allocation of the burden of proof on the issue of self-defense.

The critical instruction was as follows:

"You are instructed that self-defense is an affirmative defense, and as such, the Defendant carries the burden of proving it. However, the burden of the Defendant is not the same as the burden of the State to prove the guilt of the Defendant beyond a reasonable doubt and to a moral certainty. The Defendant bears the burden of proving his affirmative defense of self-defense only by a preponderance of the evidence. The phrase, "preponderance of the evidence" does not mean the quantum of witnesses or evidence on one side or the other; it means only that the Jury finds the evidence that the Defendant's actions were taken in defense of his person more weighty and satisfactory than the countervailing evidence. If the

512

> Jury is satisfied that the Defendant's evidence upon that point is more satisfactory than the countervailing evidence, then the Defendant has met his burden upon this particular point."

The broad principle of *In re Winship* was that the due process clause requires the State to prove each and every element of a criminal offense beyond a reasonable doubt. *Mullaney v. Wilbur* was simply one of the many instances in which that broad principle of *Winship* might apply. The privileged use of force by way of legitimate self-defense would negate — by way of justification or excuse — a simple assault just as surely as it would an assault that results in an ultimate death and comes to us as a charge of murder or manslaughter. It would apply just as surely to all aggravated assaults at intermediate points between the extremes of simple assault and first-degree murder.

As Chief Judge Murphy made very clear for the Court of Appeals in *State v. Evans*, 278 Md. 197 (1976), the allocation of the burden of persuasion on self-defense in Maryland has been affected by *Mullaney v. Wilbur*:

> "The court concluded in *Evans* that a jury instruction given in a homicide case which cast upon the defendant the burden of persuasion by a preponderance of the evidence when the issue of self-defense was raised by the evidence (*see Wilson v. State*, 261 Md. 551, 276 A. 2d 214 (1971)) was constitutionally defective under *Mullaney* since it shifted the burden to the defendant to prove justification or excuse for the homicide. We agree with that conclusion and therefore hold that all Maryland cases which contain contrary holdings are no longer valid precedents."

This was very much in line with our broad reading of the *Mullaney* and *Winship* principle in *Evans v. State*, 28 Md. App. 640, at 673:

> "Although a very narrow reading of *Mullaney v. Wilbur* could conclude that it dealt only with instructions, in a jury trial, on the subject of

the allocation of the burden of proof on the question of 'heat of passion on sudden provocation' in a case where the issue before the jury was whether a guilty verdict should be for murder or only for manslaughter, such would be a grudging and unduly restrictive reading of this groundbreaking decision. A fairer reading makes it clear that what is involved is the broader question of the allocation of the burden of persuasion where a wrongful allocation of that burden will operate to relieve the State of its obligation under the Due Process Clause, as interpreted by *Winship*, to prove each and every element of a criminal offense beyond a reasonable doubt. This goes beyond the limited defense of mitigation and it goes beyond the limited confines of jury instructions."

This section of our *Evans v. State* was quoted with approval by the Court of Appeals in their *State v. Evans, supra.*

Indeed, the Court of Appeals in *State v. Grady*, 276 Md. 178, 182, recognized the authority of both *Mullaney* and *Winship* for the principle that "the burden is on the State to prove all elements of the alleged crime ... beyond a reasonable doubt." In dealing with the defense of alibi, *State v. Grady* held that *Winship* and *Mullaney* "apply to the issue of who has the burden of proof and what that burden is when an accused relies on an alibi defense." 276 Md. at 182.

In our *Evans v. State,* we analyzed at length the constitutional inappropriateness of placing upon a defendant the ultimate burden of persuasion with respect to what had been classified traditionally as "affirmative defenses." We there said, at 707-708:

"This was the rule throughout much of the common law world with respect to the so-called 'affirmative defenses.' The defendant bore the ultimate risk of non-persuasion. If the minds of the jurors were in a state of equipoise on the existence or non-existence of self-defense, hot-blood, entrapment, etc., the

defendant lost because he had not carried his burden of preponderating persuasion. Casting upon a defendant that sort of burden of ultimately persuading the jury of his innocence (by negating in one fashion or another the necessary criminal element of a guilty mind) was the thing condemned in *Mullaney v. Wilbur* and *Winship*. A presumption as conceived of by Morgan may still have some utility for civil trials, but in a criminal trial it cuts squarely athwart the due process requirement that the State prove every element of a crime (including *mens rea*) beyond a reasonable doubt."

In affirming our decision in *Evans*, the Court of Appeals in *State v. Evans, supra*, cited with approval the broad interpretation of *Mullaney v. Wilbur*:

"[T]he Court of Special Appeals, in *Evans*, observed that in view of *Grady* and under the *Mullaney* decision itself, the principles of *Mullaney* were applicable to any defense theory of justification, excuse or mitigation, including self-defense, accident, intoxication, entrapment, duress or coercion, and necessity."

Under these guiding principles, we hold that where self-defense has been fairly generated by the evidence as an issue in the case, the burden is upon the State of negating such self-defense beyond a reasonable doubt as a necessary element of its proof of guilt. The jury instruction in this case which placed the ultimate burden of persuasion on this issue upon the appellant was in error and, upon the facts of this case, prejudicial.[1] The related offenses fall with the fall of the undergirding assault charge.

> *Judgments reversed; case remanded for a new trial.*
>
> *Costs to be paid by Baltimore County.*

---

1. In the exercise of our appellate discretion, we are willing to notice plain error in this case because the trial occurred on April 22 and 23, 1975, prior to the June 9, 1975, decision of the Supreme Court in *Mullaney v. Wilbur*. *Squire v. State*, 32 Md. App. 307, 360 A. 2d 443 (1976).